Edward J. REEVE
and Elizabeth K. Reeve,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4416)

Steven B. TUBBS
and Linda M. Tubbs,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4417)

Marc K. Sellers, Schwabe, Williamson and Wyatt, Portland, filed the motion and a response for Plaintiffs (taxpayers).

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, filed the motion and a reply for Defendant (the department).

Decision for Defendant rendered April 21, 2000.

### CARL N. BYERS, Judge.

Plaintiffs (taxpayers) appeal from assessments of additional personal income taxes for 1993. Taxpayers claim the assessments are in error because the income in question was all earned in Washington and is not taxable by Oregon. Defendant Department of Revenue (the department) claims that the income is partnership income, part of which had its source in Oregon. Because both appeals involve common facts and issues, they have been consolidated for decision. At the request of the parties, the cases have been specially designated for hearing in the Regular Division. The parties then stipulated to the facts and submitted the legal questions to the court on cross motions for summary judgment.

### FACTS

Elizabeth K. Reeve (Reeve) and Steven B. Tubbs (Tubbs) are lawyers, domiciled in Washington and practicing law in Washington. They are partners in the same large Oregon general law partnership, which has offices in Oregon, Washington, and Washington D.C. Although the partners have management control of the partnership, an Executive Committee is authorized to adjust the compensation levels of individual partners. The partnership has an unusual compensation plan. Article II, section 1, of the Partnership Agreement states:

"* * * Partners shall receive such distributions from profits as are determined annually pursuant to the annual Compensation Plan adopted by the Executive Committee. Such distribution of profits will be made as monthly fixed payments, plus semi-annually distributions or bonuses in June and December of each year (or as soon after year end as final profit distributions may reasonably be determined), until some other method of distribution is determined by the Partnership upon reasonable notice.

"The Executive Committee may designate all or any portion of the annual base compensation to be distributed

to any class of Partners in accordance with the Compensation Plan [and other payments or benefits] * * * as guaranteed payments to be made to the Partners without regard to the income of the Partnership."

The Affidavit of Robert J. Elfers, Administrative Partner of the partnership, indicates that this system is known as "90/10" system.

"* * * Under that system, 90% of the level base compensation for each 'class' was paid in 12 equal monthly installments (not, however, to exceed $10,000 per month) throughout the year. An additional 5% was paid in June and an additional 5% in December. The combination of those 12 monthly installments and the two semi-annual payments of 5% totaled 100% of the compensation established by the Executive Committee for each class at the beginning of the tax year.

"* * * * *

"Finally, in December of each year the partnership made distributions of partnership profits among all of the partners, in addition to the base compensation amounts paid throughout the year under the '90/10' system. These distributions constituted amounts equal to the excess of net partnership revenues over expenses incurred throughout the year, including prior compensation payments to partners. However, even those year-end payments were not distributed among the partners with respect to their ownership interests in partnership capital or in partnership profits. Instead, a complex computation was effected by the Accounting Department of the partnership to determine the total amount available for payment to the partners at year end. This amount was then apportioned among the partners based upon their class levels of compensation. The apportionment and payment were not determined with respect to, and did not rely upon, partner capital accounts or percentage ownership interests in the partnership or its profits."

Both Reeve and Tubbs received compensation under this plan. Both treated the "guaranteed payments" as payments for services performed entirely in Washington and not taxable by Oregon. Those payments constitute the greatest proportion of their share of partnership profits. For example, of the total amount shown on taxpayer Reeve's Schedule K-1

as self-employment income, only 15 percent was shown as net income from the partnership.[1]

## ISSUE

Are the annual-base compensation amounts received by Reeve and Tubbs from their partnership in part Oregon source income taxable by Oregon?

## ANALYSIS

Generally, Oregon follows federal income tax laws with regard to the taxation of partnership profits. A partnership is viewed as an aggregation of taxpayers, not as an entity. Its net income is attributed to and taxed to each partner. ORS 314.712(1).[2] However, the law recognizes that partners may enter into transactions with their own partnerships in a capacity other than as a member of the partnership. Under Internal Revenue Code (IRC) section 707, such transactions are considered as occurring between the partnership and one who is not a partner.

Determining when a partner is acting in a capacity other than as a member of the partnership is not always easy. Accounting for such transactions can be complicated. Prior to the adoption of IRC § 707(c), if partnership profits were not sufficient to cover amounts paid to a partner as compensation for services, they were treated as a return of capital or capital of the other partners. "Congress found this treatment to be 'unrealistic and unnecessarily complicated.'" *Andrew O. Miller, Jr.*, 52 TC 752, 759 (1960). Consequently, IRC § 707(c) was enacted to simplify and make clear the status of "guaranteed payments" to partners. That section reads:

> "* * * To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a)(relating to gross income) and, subject to section 263, for purposes of section 162(a)(relating to trade or business expenses)."

---

[1] Although the Schedule K-1 shows a significant amount as Oregon source income, taxpayers disagreed with the schedule as prepared and reported a far lesser amount on their return, thus giving rise to the assessment.

[2] All references to the Oregon Revised Statutes are to 1991.

The effect of that section is to treat such payments as nonpartnership income earned by the individual and as a deductible expense by the partnership.

It should be noted that the scope of IRC § 707(c) is limited.

> "Guaranteed payments do not constitute an interest in partnership profits for purposes of sections 706(b)(3), 707(b), and 708(b). *For the purposes of other provisions of the internal revenue laws, guaranteed payments are regarded as a partner's distributive share of ordinary income.*" Treas Reg § 1.707-1(c) (emphasis added).

Taxpayers argue that the fixed payments from the partnership constitute guaranteed payments and, under section 707(c), are treated as nonpartnership income to the recipients. Therefore, such income should be viewed as earned entirely in Washington and not taxable by Oregon.

■ However, this court has previously held that guaranteed payments for services are taxable to the extent that they are sourced in Oregon. *Pratt & Larsen Tile v. Dept. of Rev.*, 13 OTR 270 (1995). The court's decision in that case was based on ORS 316.124. That statute provides the rules for determining the adjusted gross income of a nonresident partner of any partnership. The relevant portions of ORS 316.124 state:

> "(1) In determining the adjusted gross income of a nonresident partner of any partnership, there shall be included only that part derived from or connected with sources in this state of the partner's distributive share of items of partnership income, gain, loss and deduction (or item thereof) entering into the federal adjusted gross income of the partner, as such part is determined under rules adopted by the department in accordance with the general rules in ORS 316.127.

> "(2) *In determining the sources of a nonresident partner's income, no effect shall be given to a provision in the partnership agreement which*:

> "(a) *Characterizes payments to the partner as being for services* or for the use of capital, or allocated to the partner, as income or gain from sources outside this state, a greater proportion of the partner's distributive share of partnership

income or gain than the ratio of partnership income or gain from sources outside this state to partnership income or gain from all sources, except as authorized in subsection (4) of this section; * * *." (Emphasis added.)

Taxpayers contend that the court's decision in *Pratt & Larsen* is in error and is inconsistent with the statutory scheme. Taxpayers note that the same legislative session enacted ORS 314.712(2),[3] which adopts the treatment of IRC § 707. Since IRC § 707(c) treats guaranteed payments as non-partnership income, taxpayers view *Pratt & Larsen* as effectively repealing ORS 314.712(2). Taxpayers would reconcile the two statutes by giving no effect to the language in the Partnership Agreement but, if the substance of the transaction was a guaranteed payment, then ORS 314.712(2) controls.

■ The court does not agree with taxpayers' view for several reasons. First, the two provisions are found in different chapters of the Oregon Revised Statutes and serve different functions. ORS 314.712 aligns the taxation of partnerships for Oregon income tax purposes with federal income tax law. In contrast, ORS 316.124 is intended to address a jurisdictional problem faced by the state.[4] Consequently, it is entirely consistent to view ORS 316.124 as an exception to the general rules of ORS 314.712.

■■ Second, it seems clear that the "no effect" language was intended to overcome manipulation of the character of income that would avoid taxation in Oregon. In other words, it was intended to overcome precisely what taxpayers are trying to achieve here. There is no question in this case that taxpayers were acting in their capacity as partners. There is also no question that the compensation received by taxpayers was received in their capacity as partners. ORS 314.712(2) makes IRC § 707 applicable only "if a partner engages in a transaction with a partnership other than in the partner's capacity

---

[3] "If a partner engages in a transaction with a partnership other than in the partner's capacity as a member of the partnership, the transaction shall be treated in the manner described in section 707 of the Internal Revenue Code." ORS 314.712(2).

[4] Although the federal income tax laws also face similar jurisdictional problems, there is no federal statute like ORS 316.124. *See Andrew O. Miller, Jr.*, 52 TC 752 (1969), *acq* 1972-2 CB.

as a member of the partnership." In view of the limited purposes of IRC § 707(c) treatment, it is reasonable to conclude that for purposes of determining the source of income, IRC § 707(c) would not apply.

Further, under IRC § 707(c), the payments in question can only qualify for treatment as a nonpartner transaction if they are for services. Inasmuch as ORS 316.124 directs that no effect shall be given to the partnership agreement characterizing the payments as for services, the effect of the statute is that the payments cannot be viewed as for services. Consequently, they cannot qualify as guaranteed payments under IRC § 707(c). The legislature must have intended to treat such payments as nonguaranteed payments for the sole purpose of determining the source of income. The court suggests that such a narrow purpose, *i.e.*, determining the source of income, is not inconsistent with the rest of the statutory scheme.

It is interesting that taxpayers' Partnership Agreement does not directly characterize the income. The Partnership Agreement indicates that the partners are to receive distributions from "profits." That would appear to mean that such distributions are made after IRC § 162(a) expenses, which is inconsistent with taxpayers' position. The Partnership Agreement does not indicate that such distributions are for "services." It does indicate that the partners must devote their full time and attention to the practice of law for the benefit of the partnership. However, there may be a difference between a partner who devotes "full time and attention" in the capacity of a partner and a partner who provides "services" to the partnership.

Article II, section 1, of the Partnership Agreement allows the Executive Committee to designate "all or any portion" of the annual base compensation (and other benefits) as "guaranteed payments." The court views this as an indirect characterization as payment for services and will give it no effect.

Applying ORS 316.124(2), the court finds that the partnership simply distributes shares of its profits to partners who live and work in Washington. Regardless of why those profits are received by the partners, under ORS

316.124 those payments are not considered for "services" and therefore cannot qualify as a guaranteed payment under IRC § 707(c). Therefore, for the purpose of determining the source of the income only, the distributive share of Reeve's and Tubbs' partnership profits includes their base annual compensation. The department's assessments must be sustained. Now, therefore,

IT IS ORDERED that Plaintiffs' Motion for Summary Judgment is denied, and

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment is granted. Costs to neither party.